# In the United States Court of Federal Claims

No. 11-597C

Filed September 29, 2015

|  |  |  |
|---|---|---|
| ESTES EXPRESS LINES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Contract Disputes Act (41 U.S.C. §§ |
| v. | ) | 7101-09); RCFC 12(b)(1); RCFC 56; |
| | ) | Federal Acquisition Regulation; Certified |
| THE UNITED STATES, | ) | Claim; Sum Certain. |
| | ) | |
| Defendant. | ) | |
| | ) | |

*Robert D. Moseley, Jr.*, Counsel of Record, Smith Moore Leatherwood LLP, Greenville, S.C., for plaintiff.

*Daniel B. Volk*, Trial Attorney, *Martin F. Hockey, Jr.*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, United States Department of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

GRIGGSBY, Judge

## I.   INTRODUCTION

Plaintiff, Estes Express Lines, brought this action against the United States to recover freight charges incurred by the Marine Corps Community Services pursuant to the Contract Disputes Act, 41 U.S.C. §§ 7101-09 (2012).  This matter is on remand from the United States Court of Appeals for the Federal Circuit, *Estes Express Lines v. United States*, 108 Fed. Cl. 416 (2013), *rev'd*, 739 F.3d 689 (Fed. Cir. 2014), and on the parties' cross-motions for summary judgment and defendant's motion to dismiss pursuant to Rules 12(b)(1) and 56 of the Rules of the United States Court of Federal Claims ("RCFC").  For the reasons set forth below, the Court **GRANTS** defendant's motion to dismiss for lack of subject-matter jurisdiction and **DENIES** the parties' cross-motions for summary judgment.

## II.     PROCEDURAL AND FACTUAL BACKGROUND[1]

### A.     Factual Background

This matter involves a long-standing dispute over unpaid freight charges.  On October 31, 2007, the Marine Corps Community Services ("MCCS") awarded contract number H0107-D-0005 to Salem Logistics, Inc. ("Salem"), a freight broker.  *Estes Express Lines v. United States*, 739 F.3d 689, 691 (Fed. Cir. 2014).  Pursuant to that contract, Salem provided MCCS with certain transportation and freight management services, including coordinating the pick up, transport and delivery of vendor products to and from various MCCS, Marine Corps Exchange ("MCX")[2] and Navy Exchange locations.  *Id*.  Pursuant to the contract, Salem billed MCCS for the services rendered and then paid the freight carriers that provided the transportation and freight services.  *Id*.

### 1.     Estes's Freight Services

Between June 2008 and February 2009, Salem arranged for Estes Express Lines ("Estes") to carry various shipments called for by the contract.  *Id*.  Although Estes did not execute a written contract with Salem for these freight services, Estes handled the shipments under its common carrier tariff.  *Id*.  Each shipment handled by Estes was identified by a bill of lading, a freight bill and a delivery receipt.  *Id*.

---

[1] The facts recounted in this Memorandum Opinion and Order are taken from the United States Court of Appeals for the Federal Circuit's decision in *Estes Express Lines v. United States*, 739 F.3d 689, 691 (Fed. Cir. 2014), as well as from plaintiff's complaint ("Compl. at ___"), plaintiff's motion for summary judgment ("Pl. Mot. at ___"), plaintiff's memorandum in support of its motion for summary judgment ("Pl. Mem. at ___"), defendant's response to plaintiff's motion and defendant's motion to dismiss or, in the alternative, cross-motion for summary judgment ("Def. Mot. at ___"), defendant's appendix to its motions ("Def. App'x at ___"), plaintiff's response and reply ("Pl. Reply at ___"), plaintiff's appendix to its response and reply ("Pl. App'x at ___"), and defendant's reply in support of its motions ("Def. Reply at ___").  Except where otherwise noted, the facts recited here are undisputed.

[2] MCCS is a government entity that includes the Marine Corps Exchange.  Def. Mot. at 2.  And so, the Court refers to any communication by and between MCCS or MCX and plaintiff as communication by and between MCCS and plaintiff.

Pursuant to the contract between Salem and MCCS, Estes invoiced the government care of Salem for freight charges. *Id*. These invoices sought $66,283.68 in discounted freight and transportation service charges. Compl. at ¶ 13.[3]

### 2.    Dispute With Salem

Although MCCS paid Salem for some of the freight services performed by Estes, Salem did not in turn pay Estes for these services. Def. App'x at 13; Compl. at ¶ 8. Estes alerted the government to the fact that it had not received payment from Salem in March 2009. Def. Mot. at 4; Def. App'x at 84. Upon learning about the payment problem, MCCS began paying Estes directly for freight services for which it had not yet paid Salem. *Id*. However, this arrangement did not resolve Estes's concerns about the outstanding payments due for services for which it had not been paid. Pl. App'x at 1, 11-12; Def. App'x at 8-9, 23-30. Consequently, the government and Estes exchanged a series of documents seeking to resolve these outstanding invoices. *Id*.

Specifically, on March 27, 2009, MCCS sent Estes a letter stating that MCCS had encountered problems with the Salem contract and was "trying to reconcile invoices, payments, and non-payments to each carrier with the hope of paying outstanding undisputed invoices as quickly as possible." Def. App'x at 13-14. In that letter, MCCS requested that Estes send MCCS "Excel spreadsheets of all open invoices for freight movements billed to Salem delivered to MCX, MCCS or a vendor partner of MCX." *Id*. at 13. Estes responded to MCCS's letter by email on March 27, 2009 and attached to that email "a list of all of the open bills" totaling $66,650.61. *Id*. at 8-12. Subsequently, on May 6, 2009, Estes sent MCCS a past due notice stating that if payment was not received, MCCS would owe Estes $177,588.54 in undiscounted freight charges. *Id*. at 15-22. The past due notice also included a list of unpaid invoices in the amount of $66,650.61. *Id*.; Pl. Reply at 3; Pl. App'x at 1-10.

---

[3] Estes agreed to offer the government a discount rate for its services at a 70% reduction in price for certain shipments. Pl. Mem. at 3. But, Estes maintains in this action that the government should pay the undiscounted rate for these services because the outstanding invoices have not been timely paid. *Id*. And so, in the complaint, Estes seeks to recover $147,645.33 as payment for its outstanding invoices. Compl. at Prayer for Relief. This figure is, however, in some dispute. In its motion for summary judgment, Estes seeks to recover $94,344.20. Pl. Mot. at 1. And yet, in its reply brief, Estes seeks to recover $91,844.20. Pl. Reply at 10.

On May 11, 2009, MCCS sent Estes an email seeking clarification of the amount Estes was seeking from the government.  Pl. App'x at 12.  In particular, MCCS requested that Estes clarify the discrepancy in the amount due, because Estes requested $177,588.54 in its May 6, 2009 email, but subsequently provided the government with invoices seeking $66,650.61.  *Id*. MCCS also states in this email that "[w]e will need a claim letter signed from you once final numbers are agreed on."  *Id*.

Estes responded to MCCS by email on May 14, 2009.  *Id*. at 11.  In this email, Estes provided the government with a chart summarizing its unpaid invoices.  *Id*.  The chart indicates that the amount due is $66,650.61; but, the chart also provides that the "Amount in Dispute" is $0.00.  *Id*.

### 3.   Payment Of Certain Invoices

On July 2, 2009, MCCS paid Estes $28,931.28 for freight services for which it had not already paid Salem.  Compl. at ¶ 14; Def. App'x at 47.  On July 13, 2009, MCCS informed Estes that it would not pay Estes "for amounts that MCCS has already paid to Salem Logistics."  Def. App'x at 43.  To date, Estes has not received payments for the freight services that it provided for which the government had previously paid Salem.  *Id*.

### B.   Procedural Background

On February 3, 2010, Estes commenced suit against several parties−including Salem, M.J. Soffe, LLC, and the United States−in the United States District Court for the Middle District of North Carolina, seeking to recover $147,645.33 in unpaid freight charges.  Complaint, *Estes Express Lines v. Salem Logistics, Inc. et al.*, No. 10-102 (M.D.N.C. Feb. 3, 2010).  On July 8, 2011, the district court transferred Estes's claim against the United States to this Court. Order, *Estes Express Lines*, No. 10-102 (M.D.N.C. July 8, 2011).

Estes filed its complaint in this Court on October 17, 2011, seeking $147,645.33 from the United States.  Compl. at 4.  On January 6, 2012, the government moved to dismiss the complaint for lack of subject-matter jurisdiction and for failure to state a claim pursuant to RCFC 12(b)(1) and 12(b)(6).  *See generally*, Def. Mot. Dismiss, dated Jan. 6, 2012.  On January 15, 2013, the Court dismissed Estes's complaint for lack of jurisdiction, holding that Estes failed to show that there was privity of contract between Estes and the government with respect to the

transportation and freight services that Estes provided. *Estes Express Lines*, 108 Fed. Cl. at 422 (Allegra, Judge).

On February 13, 2013, Estes appealed the Court's decision to the United States Court of Appeals for the Federal Circuit. Notice of Appeal, dated Feb. 13, 2013. On January 3, 2014, the Federal Circuit reversed the Court's decision and remanded the case. *Estes Express Lines*, 739 F.3d at 689. In its decision, the Federal Circuit held that the Court should not have dismissed the complaint upon the ground that Estes had not established privity of contract, because the bills of lading that Estes relied upon in the case were sufficient to establish privity of contract. *Id.* The Federal Circuit did not "express any opinion regarding the merits of Estes's claims and the issue of ultimate liability." *Id.* at 694.

Following the remand and the completion of discovery, Estes filed a motion for summary judgment on April 7, 2015, seeking $94,344.20 in undiscounted freight charges from the government. Pl. Mot. at 10. On May 8, 2015, the government responded to plaintiff's motion for summary judgment and also moved to dismiss the complaint or, in the alternative, for summary judgment. *See generally* Def. Mot. In its motion to dismiss, the government argues that the Court lacks jurisdiction to consider Estes's claim, because Estes has not met the jurisdictional requirements of the Contract Disputes Act ("CDA"). *See* Def. Mot. at 7-10.[4] In the alternative, the government also argues that Estes has not proven the existence of a contractual obligation on the part of the United States that requires the government to make any payments to Estes. *Id.* at 12. On May 26, 2015, plaintiff filed a reply in support of its motion for summary judgment and a response to the government's dispositive motion. *See generally* Pl. Reply. The government subsequently filed a reply in support of its motion to dismiss or, in the alternative, for summary judgment on June 12, 2015. *See generally* Def. Reply. These matters having been fully briefed, the Court addresses the parties' pending motions.

---

[4] This jurisdictional issue has not been previously addressed by this Court or the Federal Circuit. *See generally* 739 F.3d 689; *Estes Express Lines*, 108 Fed. Cl. at 416.

### III.    JURISDICTION AND LEGAL STANDARD

#### A.    Jurisdiction, RCFC 12(b)(1)

It is well settled that subject-matter jurisdiction is a "threshold matter," and that a case may proceed no further if the Court lacks jurisdiction. *Copar Pumice Co., Inc. v. United States*, 112 Fed. Cl. 515, 527 (2013) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006)). Plaintiff carries the burden of establishing subject-matter jurisdiction by a preponderance of the evidence. *See, e.g.*, *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988); *see also McNutt v. GMAC*, 298 U.S. 178, 189 (1936) (noting that the burden of proving that the matter is properly before the Court should rest on the party seeking the Court's jurisdiction). When considering whether to dismiss an action for lack of subject-matter jurisdiction, the Court "must assume all factual allegations to be true and draw all reasonable inferences in the plaintiff's favor." *Redondo v. United States*, 542 F. App'x 908, 910 (Fed. Cir. 2013)

In addition, "federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011). In this regard, "[t]he objection that a federal court lacks subject-matter jurisdiction . . . may be raised . . . at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh*, 546 U.S. at 500. And so, if at any point the Court determines that it does not have jurisdiction, the Court must dismiss the case. *Id.*; RCFC 12(b)(1); *see Copar Pumice Co., Inc.*, 112 Fed. Cl. at 527.

#### B.    Summary Judgment, RCFC 56

Under Rule 56 of the Rules of the United States Court of Federal Claims, a party is entitled to summary judgment when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56; *Anderson v. Liberty Lobby*, 477 U.S. 242, 247 (1986). A fact is material if it might affect the outcome of a case. *See Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."); *see also Applied Med. Res. Corp. v. Tyco Healthcare Grp. LP*, 534 F.3d 972, 977 (Fed. Cir. 2013). An issue is genuine if a reasonable

trier of fact could find for the non-moving party. *Anderson*, 477 U.S. at 250 ("The inquiry performed is the threshold inquiry of determining whether there is the need for a trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."); *see Frolow v. Wilson Sporting Goods*, 710 F.3d 1303, 1310 (Fed. Cir. 2013).

In resolving motions for summary judgment, the Court will not make credibility determinations and will draw all inferences '"in the light most favorable to the party opposing the motion."' *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). In doing so, the Court does not weigh the evidence presented, but instead must "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *Agosto v. INS*, 436 U.S. 748, 756 (1978); *see Am. Ins. Co. v. United States*, 62 Fed. Cl. 151, 154 (2004). And so, the Court may only grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party . . . ." *Matsushita*, 475 U.S. at 587.

The above standard applies when the Court considers cross-motions for summary judgment. *Principal Life Ins. Co. & Subsidiaries v. United States*, 116 Fed. Cl. 82, 89 (2014); *see Estate of Hevia v. Portrio Corp.*, 602 F.3d 34, 40 (1st Cir. 2010). And so, when both parties move for summary judgment, '"the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration."' *Abbey v. United States*, 99 Fed. Cl. 430, 436 (2011) (quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987)).

### C.     The Contract Disputes Act

The United States Court of Federal Claims is a court of limited jurisdiction and the Court "possess[es] only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Under the Tucker Act, the Court has limited jurisdiction to adjudicate "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2011).

Specifically, the Tucker Act provides that this Court "shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 7104(b)(1) of title 41 [the Contract Disputes Act], . . . on which a decision of the contracting officer has been issued under section 6 of that Act." 28 U.S.C. § 1491(a)(2). Thus, the key to establishing jurisdiction pursuant to the Tucker Act is to demonstrate compliance with the requirements of the CDA. *Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1575 (Fed. Cir. 1995); *see M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1328 (Fed. Cir. 2010) (The CDA's requirements are mandatory and are jurisdictional prerequisites before a contractor can file suit in this Court.).

The CDA requires that all claims by a contractor against the government be in writing and be submitted to the contracting officer for a decision. 41 U.S.C. § 7103(a). While the CDA itself does not define the term, the Federal Acquisition Regulation ("FAR") 2.101(b) defines a "claim" as follows:

> Claim means a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or related to the contract.

FAR 2.101(b). In this regard, this Court has long recognized that to constitute a "written demand," a claim must be "for something due or believed to be due" and must "provide the contracting officer with notice of the relief requested and the legal and factual basis for that request." *Parker v. United States*, 77 Fed. Cl. 279, 286 (2007) *aff'd*, 280 F. App'x 957 (Fed. Cir. 2008); *see Contract Cleaning Maint., Inc. v. United States*, 811 F.2d 586, 592 (Fed. Cir. 1997) (The written demand must include "a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim.").

The FAR also provides that:

> *A voucher, invoice, or other routine request for payment that is not in dispute when submitted is not a claim.* The submission may be converted to a claim, by written notice to the contracting officer as provided in 33.206(a), if it is disputed, either as to liability or amount or is not acted upon in a reasonable time.

FAR 2.101(b) (emphasis supplied); *see Parsons Global Servs., Inc. v. McHugh*, 677 F.3d 1166, 1170 (Fed. Cir. 2012); *Reflectone*, 60 F.3d at 1575-76. And so, under this definition, demands for payment are classified as either "routine" or "non-routine." *Parsons*, 677 F.3d at 1170

8

(Whether a request for payment is routine or nonroutine is a factual distinction, which depends on the circumstances in which the requested costs arose.).  In the case of "routine" demands, there must be a preexisting dispute in order for the demand for payment to constitute a claim under the CDA.  *Id.*  A "demand for compensation for unforeseen or unintended circumstances cannot be characterized as 'routine'" and is therefore nonroutine.  *Reflectone*, 60 F.3d at 1577.  On the other hand, vouchers, invoices and similar requests for payment are "submitted for work done or equipment delivered by the contractor in accordance with the expected or scheduled progression of contract performance" and are therefore routine and do not constitute a claim unless a preexisting dispute is shown.  *James M. Ellett Const. Co. v. United States*, 93 F.3d 1537, 1542 (Fed. Cir. 1996) (quoting *Reflectone*, 60 F.3d at 1577).

Under the CDA, a claim must also include a request for a final decision from the contracting officer.  *M. Maropakis*, 609 F.3d at 1327-28; *James M. Ellett*, 93 F.3d at 1543 ("This does not require an explicit request for a final decision; 'as long as what the contractor desires by its submissions is a final decision, that prong of the CDA claim test is met'" (internal citations omitted)).  In this regard, the CDA permits a contractor to file an action disputing the final decision of a contracting officer in this Court within 12 months of receiving the decision on a claim.  41 U.S.C. § 7104(b)(3).  A contractor may also seek review in this Court if the contracting officer fails to respond to a contractor's claim within 60 days, as provided in the CDA.  41 U.S.C. § 7103(f).  As such, the predicate for jurisdiction under the CDA is bringing an action directly to this Court after receiving a contracting officer's final decision on a claim, or a deemed denial of a claim.  41 U.S.C.  § 7104(b); *Kellogg Brown & Root Servs., Inc. v. United States*, 115 Fed. Cl. 46, 51–52 (2014).

In addition, a claim submitted pursuant to the CDA must seek a sum certain.  *See M. Maropakis*, 609 F.3d at 1327; *see also K-Con Bldg. Sys. v. United States*, 778 F.3d 1000, 1005 (Fed. Cir. 2015) (quoting *Reflectone*, 60 F.3d at 1576); FAR 52.233-1(c) (2015).  To satisfy the sum certain requirement, the contractor must provide a clear, unequivocal statement of the amount of money it is requesting.  *CPS Mech. Contractors, Inc. v. United States*, 59 Fed. Cl. 760, 764 (2004).

Finally, the CDA requires that if the claim made by the contractor exceeds $100,000, the contractor must certify that the claim has been made in good faith, contains accurate and

complete data, accurately reflects the amount sought, and that the certifier has authority to make such representations.  41 U.S.C. § 7103(b)(1); *see* FAR 33.207(c).  In addition, all of the CDA's prerequisites must be satisfied before this Court can consider a contractor's claim and this "waiver of sovereign immunity must be strictly construed in favor of the sovereign." *Orff v. United States*, 545 U.S. 596, 601–02 (2005); *M. Maropakis*, 609 F.3d at 1329 ("For the Court of Federal Claims to have jurisdiction under the CDA, the contractor must submit a proper claim— a written demand that includes (1) adequate notice of the basis and amount of a claim and (2) a request for a final decision.") (citing *James M. Ellett*, 93 F.3d at 1541–42).   For this reason, the jurisdictional prerequisites of the CDA are mandatory and are intended to encourage parties to resolve contract disputes outside of the judicial process when possible.  *M. Maropakis Carpentry, Inc.*, 609 F.3d at 1331.

## IV.   ANALYSIS

The government has moved to dismiss this matter for lack of subject-matter jurisdiction, because Estes has not met the jurisdictional prerequisites to bring its claim under the CDA.  *See generally*, Def. Mot.[5]  "The objection that a federal court lacks subject-matter jurisdiction . . . may be raised at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh*, 546 U.S. at 500.  And so, if at any point the Court determines that it does not have jurisdiction, the Court must dismiss the case. *Id*.; RCFC 12(b)(1); *see Copar Pumice Co., Inc.*, 112 Fed. Cl. at 527.

For the reasons discussed below, the uncontroverted facts in this case show that plaintiff failed to submit a certified CDA claim to the contracting officer before commencing this action. *See generally* Pl. Reply.  And so, the Court must dismiss the complaint for lack of subject-matter jurisdiction.

### A.   Estes Has Not Submitted A Claim To The Contracting Officer

It is well-settled that submitting a written claim to the contracting officer, that provides "a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim," is a prerequisite for bringing suit in this Court under the Contract

---

[5] Plaintiff does not dispute that the CDA applies in this case.  Pl. Reply at 1-2.  Rather, plaintiff argues that it has met the mandatory requirements of the CDA.  *Id*.

Disputes Act.  *Contract Cleaning*, 811 F.2d at 592.  The government argues that the Court must dismiss this matter because Estes has not identified any document that could constitute its claim under the CDA.  *See generally* Pl. Mem.; Pl. Reply.  In its opposition to the government's motion to dismiss, Estes relies upon several documents to show that it has submitted a claim under the CDA.  Pl. Reply at 2-4.  For the reasons discussed below, plaintiff's reliance upon these documents is misplaced.

### 1.      The March 27, 2009 Email

As an initial matter, Estes incorrectly relies upon its March 27, 2009 email to the government to show that it submitted a valid claim under the CDA.  Pl. Reply at 2.  In this regard, Estes argues that the subject email is a nonroutine request for payment and that the email requests a final decision from the contracting officer.  *Id.*  But, a plain reading of the subject email makes clear that it is not a claim under the CDA.  Def. App'x at 8.

First, the text of the March 27, 2009 email makes clear that this email is a routine request for payment for services rendered under the Salem contract.  The email provides in pertinent part that:

> [F]ollowing is a list of all of the open bills on the MCX c/o Salem Logistics account for you[r] review. . . .  Please let me know if you need any additional information.  I look forward to hearing from you soon and working with you to resolve the past due balance.

*Id.*  Estes does not dispute that it sent this email to the government to facilitate the payment of its outstanding invoices.  Pl. Reply at 2.  Nonetheless, Estes argues that the March 27, 2009 email is not a routine request for payment, because Estes submitted the request for payment contained in this email directly to the government−rather than to Salem.  Pl. Reply at 4.

Estes's decision to submit its request for payment directly to the government does not, however, alter the routine nature of its request.  *Volmar Const., Inc. v. United States*, 32 Fed. Cl. 746, 753 (1995) ("The FAR restriction disables contractors from submitting only a 'voucher, invoice, or other routine request for payment' and thereby purporting to assert a valid claim under the CDA." (citing FAR 33.201)).  Rather, in order for this request to be nonroutine, there must be some evidence of an unexpected or unforeseen action on the part of the government that is related to the demand for payment.  *Parsons*, 677 F.3d at 1170-71 (A nonroutine request for payment generally includes "the presence of some unexpected or unforeseen action on the government's part that ties it to the demanded costs.").

Estes puts forward no such evidence here.  In fact, while there is no dispute that Salem unexpectedly stopped paying Estes for services rendered under the Salem contract, there is no evidence in the March 27, 2009 email−or elsewhere−to show that the *government* undertook any unexpected or unforeseen action to cause Estes to send the March 27, 2009 email.  *See generally* Pl. Reply; Def. Mot.; Def. App'x at 8.  Indeed, it is undisputed that, just prior to sending this email, Estes received a letter from the government requesting that Estes provide information about "all open invoices for freight movements billed to Salem delivered to MCX, MCCS or a vendor partner of MCX."  Def. App'x at 13.  Estes's March 27, 2009 email simply provides the government with the requested billing information.  Def. App'x at 8, 13.

The submission of this kind of billing information to the government is a routine part of the process for a government contractor to recover payment for services rendered  *See Reflectone*, 60 F.3d at 1575 (Invoices "submitted for work done or equipment delivered by the contractor in accordance with the expected or scheduled progression of contract performance" are routine. (citing FAR 2.101(b)); *see also Parsons*, 677 F.3d at 1170-71; *Scan-Tech Sec., L.P. v. United States*, 46 Fed. Cl. 326, 331 (2000) ("Examples of routine requests are invoices for completed work, requests for scheduled progress payments, and vouchers for disbursement under a cost-reimbursement contract." (internal citations omitted)).  And so, Estes's routine request for payment of its outstanding invoices cannot constitute its CDA claim in this case, absent evidence of a preexisting dispute with the government.  *Reflectone*, 60 F.3d at 1575.

Second, there is also no evidence of a preexisting dispute between Estes and the government regarding the unpaid invoices referenced in the March 27, 2009 email.  Def. App'x at 8.  Estes acknowledges that it did not even notify the government about these unpaid invoices until March 2009.  Def. App'x at 83-84 (Deposition of Wendy W. Belcher, Senior Manager at Estes).  And so, the March 27, 2009 email does not establish a preexisting dispute and this email shows only that Estes and the government were starting to engage in negotiations to resolve the outstanding invoices.  Def. App'x at 8; *Heyl & Patterson, Inc. v. O'Keefe*, 986 F.2d 480, 485-86 (Fed. Cir. 1993) *overruled on other grounds by Reflectone, Inc. v. Dalton*, 60 F.3d 1572 (Fed. Cir. 1995) (Each of plaintiff's submissions "suggests in one way or another that [plaintiff] and the government were still negotiating. . . . None of the submissions requested a final decision, explicitly or implicitly. . . . [Therefore,] no claim exists under the CDA as implemented by the FAR."); *see Reflectone*, 60 F.3d at 1578 ("[C]orrespondence suggesting disagreement during

negotiations, while they may ultimately lead to a dispute, do not, for purposes of the Act, satisfy the clear requirement that the request be in dispute." (internal citations omitted)); *Mayfair Constr. Co. v. United States*, 841 F.2d 1576, 1577 (Fed. Cir. 1988), *cert. denied*, 488 U.S. 980 (1988) (A "pre-dispute, negotiation posture" does not satisfy the requirements of the CDA).

In addition, Estes also incorrectly argues that the March 27, 2009 email satisfies the CDA's requirement to request a final decision from the contracting officer. 41 U.S.C.A. § 7103(a). In this regard, this Court has long recognized that to constitute a valid claim under the CDA, a contractor must make a written demand for a final decision from the contracting officer. *Parker*, 77 Fed. Cl. at 286; *Contract Cleaning*, 811 F.2d at 592. Estes does not dispute that this email does not explicitly request a contracting officer final decision. Pl. Reply at 2. Nonetheless, Estes argues that the statement "I look forward to hearing from you soon and working with you to resolve past due balances" shows that Estes implicitly requested a final decision. *Id.*

Este's arguments are unavailing. A plain reading of the subject email shows that Estes is seeking to have additional discussions with the government about its unpaid invoices. Def. App'x at 8. There is simply no explicit−or implicit−request for a final decision from the contracting officer in this email. *Id.* And so, Estes has not shown that this email satisfies the CDA's requirement to request a final decision from the contracting officer before commencing this action. 41 U.S.C.A. § 7103(a).

### 2.    The May 6, 2009 Notice

Estes is similarly misguided in arguing that its May 6, 2009 past due notice constitutes a valid claim under the CDA. Pl. Reply at 3. This notice states in relevant part that:

> This is notification that your account with Estes Express lines is past due. Failure to remit payment in full within 20 days will result in the addition of forfeited discount penalties and/or 30% penalty of undiscounted freight charges for the total amount due of $177,588.54. . . . We would like to resolve any outstanding bills on your account.

Def. App'x at 15. In addition, Estes attaches unpaid invoices in the amount of $66,650.61 to this notice. *Id.* at 15-22.

Estes's past due notice is not a claim under the CDA.  Similar to Estes's March 27, 2009 email, there is no explicit, or implicit, request for a final decision from the contracting officer in this notice, as required by the CDA.  Def. App'x at 15; 41 U.S.C.A. § 7103(a).

The notice also does not request a sum certain, as required by the CDA.  Def. App'x at 15; FAR 52.233-1(c).  In this regard, the notice actually states that the amount shown as past due is subject to change.  Def. App'x at 15-22.  This Court has long recognized that to satisfy the sum certain requirement under the CDA, a contractor must provide a clear, unequivocal statement of the amount of money it is requesting.  *K-Con*, 778 F.3d at 1005; *CPS Mech. Contractors*, 59 Fed. Cl. at 764; *Reflectone*, 60 F.3d at 1575.  And so, plaintiff cannot rely upon this notice to constitute its claim under the CDA.

### 3.      The May 14, 2009 Email

Plaintiff also incorrectly argues that its May 14, 2009 email to MCCS, "providing yet another summary of the outstanding invoices totaling $66,650.01," constitutes a claim under the CDA.  Pl. Reply at 3.  The subject email is devoid of any language to show that Estes is requesting a final decision from the contracting officer.  Pl. App'x at 11; 41 U.S.C.A. § 7103(a).  The email also does not seek a sum certain, as required by the CDA.  *Id.*; FAR 52.233-1(c).  In fact, the email states that the "amount in dispute" is $0.00.  Pl. App'x at 11.  And so, like the correspondence between Estes and the government discussed above, the May 14, 2009 email constitutes a routine submission of its unpaid invoices for payment.  Pl. App'x at 11; *M. Maropakis*, 609 F.3d at 1327-28; *Reflectone*, 60 F.3d at 1575 (routine submissions for payment are not a CDA claim).

### 4.      The Package Containing All Bills Of Lading

Estes also incorrectly argues that a package of freight bills that it submitted to the government on an unspecified date shows that it has submitted a CDA claim.  Pl. Reply at 3.  Estes has not produced this package of bills in support of its opposition to the government's motion to dismiss.  *Id.*; *see generally*, Pl. App'x; Pl. Reply.  Nor has Estes shown how this package of bills could contain a request for a final decision from the contracting officer as required by the CDA.  Pl. Reply at 3.

It is well established that plaintiff bears the burden of showing it has satisfied all of the jurisdictional prerequisites of the CDA. *M. Maropakis*, 609 F.3d at 1327 ("A plaintiff bears the burden of establishing subject-matter jurisdiction by a preponderance of the evidence." (citing *Reynolds*, 846 F.2d at 748)). Because Estes has not shown how this package of bills could comply with the requirements of the CDA, plaintiff cannot rely upon this package to constitute its claim under the CDA.

### 5.       The Email String Following The March 27, 2009 Email

Additionally, plaintiff mistakenly argues that a string of emails between Estes and the government following its March 27, 2009 email are evidence of its claim. Pl. Rep. at 3. In this regard, plaintiff contends that the email string shows "multiple other demands and inquiries regarding the status of payment from the Government." Pl. Reply at 3. But, the emails in question make no reference to the unpaid invoices at issue in this case. Compl. at ¶¶ 14-15; Def. App'x at 47. Rather, the subject emails pertain to invoices that the government has already paid in July 2009. *Id*. And so, these emails cannot constitute Estes's written demand for payment of the invoices at issue in this case. Def. App'x at 23-30.

### 6.       The July 13, 2009 Final Denial Letter

Finally, plaintiff erroneously argues that other documents−while not a claim−are evidence of the fact that Estes submitted a claim to the government. Pl. Reply at 4. In this regard, plaintiff points to a final denial letter sent by the government on July 13, 2009 and to a Procurement Requisition Form 408 prepared by the government on June 4, 2009. *Id*. But, both of these documents have been prepared by the government and neither the unsigned Procurement Requisition Form nor the final denial letter establish that Estes has submitted a CDA claim. Def. App'x at 43; Pl. App'x at 13-14. Moreover, with respect to the government's July 13, 2009 final denial letter, this Court has long recognized that a "contracting officer has no authority to issue a final decision" if the contractor's submission fails to meet all the requirements for a claim under the CDA. *M. Maropakis*, 609 F.3d at 1328; *D.L. Braughler Co., Inc., v. West*, 127 F.3d 1476, 1480 (Fed. Cir. 1997) ("If a contractor's submission fails to meet all of the above requirements, it is not a 'claim,' and the contracting officer has no authority to issue a final decision on the submission. As a result, any subsequent proceedings on the submission have no legal

significance." (citations omitted)).   And so, these documents cannot establish that Estes submitted a CDA claim to the government before bringing this action.

In sum, none of the documents relied upon by plaintiff satisfy the CDA's mandatory requirements that Estes submit a written claim to the government, requesting a final decision from the contracting officer and seeking a sum certain.   As a result, Estes has not met its burden to show that the Court possess jurisdiction to consider its claim under the CDA.   *M. Maropakis*, 609 F.3d at 1327.   And so, the Court must dismiss this action.   *Copar Pumice Co., Inc.*, 112 Fed. Cl. at 527; *M. Maropakis*, 609 F.3d at 1329.

### B.      Estes Has Not Certified Its "Claim"

The undisputed facts also show that Estes has not complied with the CDA's requirement to certify its claim.   Pl. Reply at 6.   In this regard, the CDA requires that a contractor certify any claim that exceeds $100,000.   41 U.S.C. § 7103(b)(1).   "[A] lack of any certification before filing cannot be waived and no cure will be allowed."   *Envtl. Safety Consultants, Inc. v. United States*, 97 Fed. Cl. 190, 202 (2011) (citations omitted); *see* 41 U.S.C. § 7103(b)(3).   And so, failure to certify a claim over $100,000 "operates as a bar to this court's jurisdiction."   *Williams v. United States*, 118 Fed. Cl. 533, 539 n.7 (2014); *Scan–Tech*, 46 Fed. Cl. at 339 ("[48 C.F.R. 33.201] effectively prevents a contractor from completely circumventing the certification requirement by asserting that its failure to certify merely constituted a defect in certification that should not deprive the court of its jurisdiction.").

In this case, it is undisputed that Estes seeks to recover $147,645.33 in monetary damages from the government in its complaint.[6]   Compl. at Prayer for Relief (The complaint states "[t]hat Judgment be entered in favor of Plaintiff against the United States in the net charge amount of $37,352.40, together with a loss of discount of $110,292.93, for a total judgment of $147,645.33 due to the actions of MCX.").   Estes does not dispute that it has not certified this claim prior to commencing this action.   Pl. Reply at 6.   Given this, the Court must also dismiss plaintiff's

---

[6] The Court's jurisdiction over this matter is determined based on the circumstances existing at the time the complaint is filed.   *Northrop Grumman Computing Sys., Inc. v. United States*, 101 Fed. Cl. 362, 363 (2011) ("Jurisdiction is assessed based on the circumstances existing at the time the complaint was filed." (citing *Sharman Co., Inc. v. United States*, 2 F.3d 1564, 1569 (Fed. Cir. 1993))).

complaint because Estes has not satisfied the certification requirement of the CDA. *Envtl. Safety Consultants, Inc.*, 97 Fed. Cl. at 202.

C.       **The Parties' Cross-Motions For Summary Judgment Are Moot**

The parties have also filed cross-motions for summary judgment on the question of whether the bills of lading that Estes relies upon to establish a contract with the government are sufficient to support Estes's claim to recover unpaid freight charges. *See generally* Pl. Mem.; Def. Mot.  Because the Court does not possess jurisdiction to consider Estes's claim, the Court need not reach the issues raised in the parties' cross-motions for summary judgment. *See Booth v. United States*, 990 F.2d 617, 620 (Fed. Cir. 1993) ("Without subject matter jurisdiction, the trial court's ruling on the Government's motion for summary judgment is moot."); *see also Lee v. United States*, 41 Fed. Cl. 36, 40 (1998) ("Because plaintiff's complaint is to be dismissed because of a lack of subject matter jurisdiction, plaintiff's motion for summary judgment is moot.").  And so, the Court denies the parties' cross-motions for summary judgment as moot.

V.       **CONCLUSION**

In sum, the undisputed facts in this case show that Estes has not satisfied the CDA's mandatory requirements to submit a certified claim to the contracting officer before commencing this action.  Indeed, the documents relied upon by plaintiff to show that it has submitted such a claim simply do not meet the requirements of the CDA.  Rather, these documents show that Estes and the government engaged in negotiations regarding Estes's unpaid invoices prior to the filing of the complaint.

In reaching the conclusion that it must dismiss the complaint, the Court acknowledges that the dispute in this case has been longstanding.  Nonetheless, this Court has an independent duty to ensure that it has jurisdiction over a matter at every stage of litigation. *Maropakis*, 609 F.3d at 1329; RCFC 12(b)(1); *see Copar Pumice Co., Inc.*, 112 Fed. Cl. at 527 (If at any point the Court determines that it does not have jurisdiction, the Court must dismiss the case).  Estes also bears the burden to show that this Court possesses subject-matter jurisdiction to consider its claim. *See, e.g.*, *Reynolds*, 846 F.2d at 748; *see also McNutt*, 298 U.S. at 189 (noting that the burden of proving that the matter is properly before the Court should rest on the party seeking the Court's jurisdiction).  Estes has not met its burden here.  And so, the Court must dismiss the complaint.

For the foregoing reasons, the Court:

1.    **GRANTS** defendant's motion to dismiss;

2.    **DENIES** as moot plaintiff's motion for summary judgment; and

3.    **DENIES** as moot defendant's motion for summary judgment.

The Clerk's Office is directed to **ENTER** final judgment in favor of defendant, **DISMISSING** the complaint.  Each party shall bear its own costs.

**IT IS SO ORDERED.**


s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
Judge