# In the United States Court of Federal Claims

No. 11-597C
Filed August 8, 2017
NOT FOR PUBLICATION

| | |
|---|---|
| ESTES EXPRESS LINES, | ) |
| Plaintiff, | ) ) ) Interstate Commerce Act; 49 U.S.C. ) § 14705; Summary Judgment, RCFC 56; |
| v. | ) Privity of Contract; Assumption of Risk. ) |
| THE UNITED STATES, | ) ) |
| Defendant. | ) ) |

*Robert D. Moseley, Jr.*, Counsel of Record, Smith Moore Leatherwood LLP, Greenville, SC, for plaintiff.

*Daniel B. Volk*, Trial Attorney, *Martin F. Hockey, Jr.*, Deputy Director, *Robert E. Kirschman, Jr.*, Director, *Chad A. Readler*, Acting Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.

## MEMORANDUM OPINION AND ORDER

GRIGGSBY, Judge

## I. INTRODUCTION

Plaintiff, Estes Express Lines ("Estes"), brings this breach of contract action to recover certain freight charges allegedly due to Estes for providing transportation and freight management services to the Marine Corps Community Services ("MCCS"). *See generally* Compl. This matter is on remand from the United States Court of Appeals for the Federal Circuit to consider whether the Interstate Commerce Act ("ICA"), 49 U.S.C. § 14705, applies to Estes's claim. *Estes Express Lines v. United States*, No. 11-597C (Fed. Cir. 2016); Pl. App. at 84.

The parties have filed renewed cross-motions for summary judgment, pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC"), upon the issues of whether the Court may consider this matter under the ICA; whether Estes has entered into a valid contract

1

with the government; and, if so, whether the government is liable to Estes for certain freight charges under that contract. For the reasons set forth below, the Court **GRANTS-IN PART** and **DENIES-IN-PART** Estes's renewed motion for summary judgment and **GRANTS-IN PART** and **DENIES-IN-PART** the government's renewed cross-motion for summary judgment.

## II.   FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.   Factual Background

This matter involves a long-standing dispute over unpaid freight charges. On October 31, 2007, the MCCS awarded contract number H0107-D-0005 to Salem Logistics, Inc. ("Salem"), a freight broker (the "Salem Contract"). Def. Renewed Mot. at 1. Pursuant to the Salem Contract, Salem provided MCCS with certain transportation, and freight management services, including coordinating the pickup, transport and delivery of vendor products to and from various MCCS, Marine Corps Exchange ("MCX"), and Navy Exchange ("NCX") locations. Pl. Renewed Mot. at 4. Under the Salem Contract, Salem billed MCCS for these services, and then Salem paid the freight carriers that actually provided the transportation and freight services. *Id.* at 5.

#### 1.   Estes's Freight Services

Between June 2008 and February 2009, Salem arranged for Estes to make various shipments called for under the Salem Contract. *Id.* at 4. Although Estes did not execute a written contract with Salem for these freight services, Estes handled the shipments under its common carrier tariff. *Id.*; *see also* Pl. App. at 17-84. Pursuant to the Salem Contract, third-party freight charges were billed to "Marine Corps Exchange c/o Salem Logistics." Pl. Renewed Mot. at 4-5; Def. Renewed Mot. at 3.

---

[1] The facts recounted in this Memorandum Opinion and Order are taken from the United States Court of Appeals for the Federal Circuit's decision in *Estes Express Lines v. United States*, 739 F.3d 689 (Fed. Cir. 2014), as well as from plaintiff's complaint ("Compl."), the government's appendix to its cross-motion for summary judgment and response to plaintiff's motion for summary judgment ("Def. App."), plaintiff's renewed motion for summary judgment ("Pl. Renewed Mot."), plaintiff's appendix to its renewed motion for summary judgment ("Pl. App."), and the government's renewed motion for summary judgment ("Def. Renewed Mot."). Except where otherwise noted, the facts recited herein are undisputed.

Generally, each shipment was identified by a bill of lading, a delivery receipt and a freight bill. Pl. Renewed Mot. at 5. In addition, all bills of lading listed MCCS as the consignee, while various third parties were listed as the shipper. *Id*. at 4-5; Pl. App. at 6-15.

Typically, Estes picked up freight from a third-party vendor, also known as a shipper. Def. Renewed Mot. at 2. The shipper, in turn, would provide Estes with a bill of lading that the shipper and Estes's driver would sign when Estes picked up the freight. *Id*. After picking up the shipment from the shipper, Estes's driver would bring the bill of lading, along with the freight, to an Estes's terminal facility, where the bill of lading would be stored. *Id*.

Upon arrival at the delivery destination, Estes's driver would obtain a signature from the government confirming delivery on an Estes-generated delivery receipt. Pl. Renewed Mot. at 4 n.1. These delivery receipts do not itemize the charges for each shipment, but the receipts do contain the signature of Estes's driver, a description of the shipment, and the consignee's and shipper's name and address. Pl. App. at 6.

For certain shipments, the government acted as both the shipper and consignee of freight moving between MCCS and NCX. Pl. Renewed Mot. at 4. For these shipments, the shipments were documented by a shipping order–rather than a bill of lading–a delivery receipt and freight bill. Def. Renewed Mot. at 11-12; Def. App. at 4-5. In such cases, a government representative signed the shipping order, which stated "Bill Salem Logistics." Def. Renewed Mot. at 12. In addition, the freight bills generated by Estes after a delivery, were addressed to "Marine Corps Exchange c/o Salem Logistics" and mailed directly to Salem. *Id.* at 3.

### 2. Payment Dispute With Salem

Although MCCS paid Salem for some of the freight services performed by Estes, Salem did not, in turn, pay Estes for all of these services. Def. App. at 15-16; Compl. ¶ 8. And so, on February 27, 2009, MCCS terminated the Salem Contract for default. Def. Renewed Mot. at 3; Def. App. at 8-9. MCCS also agreed to pay Estes directly for freight services rendered for which MCCS had not yet paid Salem. Def. App. at 15-16, 45. To that end, on July 2, 2009, MCCS paid Estes $28,931.28 for freight services for which it had not already paid Salem. Compl. ¶ 14; Def. App. at 49.

This arrangement did not resolve Estes's concerns about instances in which MCCS had paid Salem, but Salem failed to pay Estes. Def. App. at 8-9, 25-32. On July 13, 2009, MCCS informed Estes that it would not pay Estes "for amounts that MCCS has already paid to Salem Logistics." *Id.* at 45. And so, to date, Estes has not received payments for the freight services that it provided for which the government had previously paid Salem.[2] *Id.*; Compl. ¶ 14.

### B.    Relevant Procedural Background

On February 3, 2010, Estes brought an action to recover its unpaid freight charges against several parties, including MCCS and NCX, in the United States District Court for the Middle District of North Carolina. *See Estes Express Lines v. Salem Logistics, Inc., et al.*, No. 1:10-cv-00102 (M.D.N.C. 2011). On July 8, 2011, that case was transferred to this Court. *See Estes Express Lines v. United States,* 108 Fed. Cl. 416, 420 (2013).

Estes filed the transfer complaint on October 17, 2011. *Id.* Thereafter, on January 6, 2012, the government moved to dismiss the complaint for lack of subject-matter jurisdiction and for failure to state a claim upon which relief may be granted, pursuant to RCFC 12(b)(1) and (b)(6). *Id.* On January 15, 2013, the Court dismissed Estes's complaint for lack of subject-matter jurisdiction, because Estes failed to show that there was privity of contract between Estes and the government with respect to the transportation and freight services that Estes provided. *Id.* at 421-22.

On February 13, 2013, Estes appealed the Court's decision to the United States Court of Appeals for the Federal Circuit. Notice of Appeal, Feb. 13, 2013. On January 3, 2014, the Federal Circuit reversed the Court's decision and remanded the case. *See generally Estes Express Lines v. United States*, 739 F.3d 689 (Fed. Cir. 2014).

In its decision, the Federal Circuit held that the Court should not have dismissed the complaint upon the ground that Estes had not established privity of contract, because the factual circumstances of this case show that the bills of lading that Estes relied upon were sufficient to establish privity of contract with the government. *Id*. at 693-94. Specifically, the Federal Circuit found that:

---

[2] Estes alleges that the total undiscounted amount of freight charges due from the government is $91,344.20. Pl. Renewed Mot. at 6.

> Each shipment handled by Estes was identified by a bill of lading, a freight bill, and a delivery receipt. All bills of lading listed a MCCS or MCX destination as the "consignee," and most bills of lading identified the third-party vendor as the "shipper." In some instances, goods were moved from a Navy Exchange location to an MCX location, or from one MCX location to another, in which case a government entity was listed as the "shipper." Pursuant to the Salem-MCCS contract, all bills of lading further indicated that "third party freight charges" were to be billed to "Marine Corps Exchange C/O Salem Logistics." The delivery receipts also specified that charges should be billed to the "Marine Corps Exchange." Each delivery receipt was signed by a representative of the MCCS or MCX location to which the goods were delivered. Following delivery, Estes invoiced "MCX, care of Salem" for freight charges.

*Id.* at 691. And so, the Federal Circuit concluded that:

> Here, the undisputed facts are sufficient to establish that the Government is a party to the bills of lading not only as the "bill to" party, but also as the shipper at least in those instances in which goods were moved from one Government location to another. MCCS expressly authorized, by contract, its designation as a party to the bills of lading. Indeed, the Government concedes that all bills of lading were generated consistent with the instructions in the MCCS-Salem contract. The Claims Court also found that MCX accepted all shipments without exception, and that a MCX representative signed each delivery receipt listing MCX as the "bill to" party. Under these circumstances, the bills of lading are sufficient to meet Estes's burden to show privity with the Government.

*Id*. at 693-94. The Federal Circuit did not, however, "express any opinion regarding the merits of Estes's claims and the issue of ultimate liability." *Id*. at 694.

Following the remand and the completion of discovery, Estes filed a motion for summary judgment on April 7, 2015. *See generally* Pl. Mot. On May 8, 2015, the government filed a response to Estes's motion for summary judgment and a motion to dismiss or, in the alternative, for summary judgment upon the ground that the Court did not possess jurisdiction to consider Estes's claim under the Contract Disputes Act ("CDA"). *See generally* Def. Mot.

On September 29, 2015, the Court issued a Memorandum Opinion and Order, dismissing the case for lack of subject-matter jurisdiction because Estes did not comply with the requirements of the CDA before commencing this action. *Estes Express Lines v. United States*, 123 Fed. Cl. 538 (2015). On November 24, 2015, Estes appealed the Court's decision to the United States Court of Appeals for the Federal Circuit. *See* Notice of Appeal, November 24, 2015. On September 28, 2016, the Federal Circuit issued a *per curiam* decision remanding the

case to this Court, at the parties' request, to consider whether the Interstate Commerce Act provides the Court with jurisdiction to hear plaintiff's claims. *Estes Express Lines v. United States*, No. 2016-1298 (Fed. Cir. Sept. 28, 2016) (order granting joint motion to remand).

On February 16, 2017, the parties filed renewed cross-motions for summary judgment on the issues of whether the Court may consider this matter under the ICA; whether Estes has entered into a valid contract with the government; and, if so, whether the government is liable to Estes under that contract. *See generally* Pl. Renewed Mot.; Def. Renewed Mot. On March 16, 2017, the parties filed responsive briefs in connection with the parties' renewed cross-motions for summary judgment. *See generally* Pl. Renewed Resp.; Def. Renewed Resp.

On April 4, 2017, the Court directed the parties to file supplemental briefs addressing: (1) if the Court determines that there is a valid contract by and between Estes and the government with respect to the shipping services and bills of lading at issue in this litigation, whether the government assumed the risk that Salem would not pay Estes for the shipment services; and (2) whether there are any material facts that are in dispute, or unknown, with respect to whether the government assumed the risk that Salem would not pay Estes for the shipment services and bills of lading at issue in this litigation. *See generally* Scheduling Order. On May 4, 2017, the parties filed their initial supplemental briefs. *See generally* Pl. Supp.; Def. Supp. On May 25, 2017, the parties filed their responsive supplemental briefs. *See generally* Pl. Supp. Resp.; Def. Supp. Resp.

These matters having been fully briefed, the Court resolves the pending renewed cross-motions for summary judgment.

### III.   LEGAL STANDARDS

####    A.   Jurisdiction And The Interstate Commerce Act

It is well-settled that subject-matter jurisdiction is a "threshold matter," and that a case may proceed no further if the Court lacks jurisdiction. *Copar Pumice Co., Inc. v. United States*, 112 Fed. Cl. 515, 527 (2013) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006)). In this regard, the United States Court of Federal Claims is a court of limited jurisdiction and "possess[es] only that power authorized by Constitution and statute . . . ." *Kokkonen v. Guardian*

*Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).  And so, the Tucker Act grants the Court jurisdiction over:

> [A]ny claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (2012).

In this action, Estes asserts breach of contract claims pursuant to the ICA.  49 U.S.C. § 14705.  Section 14705 of the ICA provides:

> (f) **Government transportation**.--This section applies to transportation for the United States Government.  The time limitations under this section are extended, as related to transportation for or on behalf of the United States Government, for 3 years from the later of the date of--
>
>> (1) payment of the rate for the transportation or service involved;
>>
>> (2) subsequent refund for overpayment of that rate; or
>>
>> (3) deduction made under section 3726 of title 31.

49 U.S.C. § 14705 (2012).  And so, the ICA requires that a carrier bring a claim against the government under the ICA within three years from the later date of either, receiving payment, receiving a refund, or having a deduction made.  *Id*.  The Federal Circuit has also held that the ICA operates as a waiver of the government's sovereign immunity.  *Inter-Coastal Xpress, Inc. v. United States*, 296 F.3d 1357, 1365 (Fed. Cir. 2002).  And so, a timely claim for payment under a transportation contract with the United States may be brought directly to this Court pursuant to the ICA.  *Sheridan Transp. Sys., Inc. v. Gen. Servs. Admin.*, 651 F. App'x 987, 988 (Fed. Cir. 2016).

### B. Summary Judgment, RCFC 56

Under RCFC 56, a party is entitled to summary judgment when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  RCFC 56; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  A fact is material if it might affect the outcome of a case.  *See Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted.")

(citation omitted); *see also Applied Med. Res. Corp. v. Tyco Healthcare Grp. LP*, 534 F. App'x 972, 977 (Fed. Cir. 2013). An issue is genuine if a reasonable trier of fact could find for the non-moving party. *Anderson*, 477 U.S. at 250 ("The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."); *see Frolow v. Wilson Sporting Goods, Co.*, 710 F.3d 1303, 1310 (Fed. Cir. 2013).

In resolving motions for summary judgment, the Court will not make credibility determinations and will draw all inferences "'in the light most favorable to the party opposing the motion.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). In doing so, the Court does not weigh the evidence presented, but instead must "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *Agosto v. INS*, 436 U.S. 748, 756 (1978); *see Am. Ins. Co. v. United States*, 62 Fed. Cl. 151, 154 (2004). And so, the Court may only grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party . . . ." *Matsushita*, 475 U.S. at 587 (citation omitted).

The above standard also applies when the Court considers cross-motions for summary judgment. *Principal Life Ins. Co. & Subsidiaries v. United States*, 116 Fed. Cl. 82, 89 (2014); *see Estate of Hevia v. Portrio Corp.*, 602 F.3d 34, 40 (1st Cir. 2010). And so, when both parties move for summary judgment, "'the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" *Abbey v. United States*, 99 Fed. Cl. 430, 436 (2011) (quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987)).

    **C.**    **Contract Claims Against The United States**

To maintain a cause of action under the Tucker Act based upon a contract with the United States, a plaintiff must show that there is a contract directly between itself and the government, *i.e.,* that there is privity of contract. *Cienega Gardens v. United States*, 194 F.3d 1231, 1239 (Fed. Cir. 1998) (citation omitted); s*ee also Anderson v. United States*, 344 F.3d 1343, 1351 (Fed. Cir. 2003). The Federal Circuit has held that the effect of finding privity of contract is to find a waiver of sovereign immunity. *Cienega Gardens*, 194 F.3d at 1239 (citation omitted).

And so, the question of whether a contract exists is a mixed question of law and fact, but, where the parties do not dispute the relevant facts, the privity issue reduces to a question of law. *Id.* (citation omitted); *Estes Express Lines*, 739 F.3d at 693 (quoting *Cienega Gardens*, 194 F.3d at 1293).

The Tucker Act also grants this Court jurisdiction to consider claims based "upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1). The Court does not, however, possess jurisdiction to consider claims against the United States "based on contracts implied in law." *United States v. Mitchell*, 463 U.S. 206, 218 (1983) (citing *Merritt v. United States*, 267 U.S. 338, 341 (1925)); *Aboo v. United States*, 86 Fed. Cl. 618, 626 (2009) (citation omitted), *aff'd*, 347 F. App'x 581 (Fed. Cir. 2009). And so, to bring a valid contract claim against the United States in this Court, a plaintiff must establish either an express or implied-in-fact contract with the government. *Aboo*, 86 Fed. Cl. at 626 (citations omitted). Such a contract claim must also be for "actual, presently due money damages . . . ." *King v. United States*, 395 U.S. 1, 3 (1969); *see also Speed v. United States*, 97 Fed. Cl. 58, 66 (2011) (citations omitted).

In addition, plaintiff bears the burden of proving the existence of a contract with the United States, and plaintiffs must show that there is "something more than a cloud of evidence that could be consistent with a contract to prove a contract and enforceable contract rights." *D & N Bank v. United States*, 331 F.3d 1374, 1377 (Fed. Cir. 2003). To establish the existence of either an express or implied-in-fact contract with the United States, a plaintiff must show: (1) mutuality of intent; (2) consideration; (3) lack of ambiguity in the offer and acceptance; and (4) actual authority to bind the government in contract on the part of the government official whose conduct is relied upon. *Kam-Almaz v. United States*, 682 F.3d 1364, 1368 (Fed. Cir. 2012) (quoting *Hanlin v. United States*, 316 F.3d 1325, 1328 (Fed. Cir. 2003). A government official's authority to bind the United States must be express or implied. *Roy v. United States*, 38 Fed. Cl. 184, 187-89 (1997), *dismissed*, 124 F.3d 224 (Fed. Cir. 1997). And so, "the [g]overnment, unlike private parties, cannot be bound by the apparent authority of its agents." *Id.* at 187.

In this regard, a government official possesses express actual authority to bind the United States in contract "only when the Constitution, a statute, or a regulation grants it to that agent in unambiguous terms." *Jumah v. United States*, 90 Fed. Cl. 603, 612 (2009) (quoting *Tracy v. United States*, 55 Fed. Cl. 679, 682 (2003) (internal quotation marks omitted), *aff'd*, 385 F.

App'x 987 (Fed. Cir. 2010); *see also City of El Centro v. United States*, 922 F.2d 816, 820 (Fed. Cir. 1990). On the other hand, a government official possesses implied actual authority to bind the United States in contract "when the employee cannot perform his assigned tasks without such authority and when the relevant agency's regulations do not grant the authority to other agency employees." *SGS-92-X003 v. United States*, 74 Fed. Cl. 637, 652 (2006) (citations omitted); *see Aboo*, 86 Fed. Cl. at 627 (implied actual authority "is restricted to situations where 'such authority is considered to be an integral part of the duties assigned to a [g]overnment employee'" (quoting *H. Landau & Co. v. United States*, 886 F.2d 322, 324 (Fed. Cir. 1989)) (brackets existing)). In addition, when a government agent does not possess express or implied actual authority to bind the United States in contract, the government can still be bound by contract if the contract was ratified by an official with the necessary authority. *Janowsky v. United States*, 133 F.3d 888, 891–92 (Fed. Cir. 1998).[3]

## IV.   LEGAL ANALYSIS

The parties have filed renewed cross-motions for summary judgment on three issues: (1) whether the Court possesses jurisdiction to consider this matter under the Interstate Commerce Act; (2) whether Estes has entered into a valid contract with the government; and, if so, (3) whether the government is liable to Estes for certain freight charges under that contract. *See* Pl. Renewed Mot.; Def. Renewed Mot. The undisputed material facts in this matter show that the Court may consider Estes's claim under the ICA. In addition, the undisputed material facts and the Federal Circuit's January 3, 2014, decision show that Estes has entered into a valid contract with the government. Estes has not, however, demonstrated that the government is obligated to pay the freight charges in dispute under that contract. And so, for the reasons set forth below, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** Estes's renewed motion for summary

---

[3] Ratification may take place at the individual or institutional level. *SGS-92-X003 v. United States*, 74 Fed. Cl. 637, 653-54 (2006). Individual ratification occurs when a supervisor: (1) possesses the actual authority to contract; (2) fully knew the material facts surrounding the unauthorized action of his or her subordinate; and (3) knowingly confirmed, adopted, or acquiesced to the unauthorized action of the subordinate. *Id*. at 654 (quoting *Leonardo v. United States*, 63 Fed. Cl. 552, 560 (2005)). In contrast, institutional ratification occurs when the government "seeks and receives the benefits from an otherwise unauthorized contract." *Id.* (citation omitted); *see Janowsky v. United States*, 133 F.3d 888, 891-92 (Fed. Cir. 1998).

judgment; **GRANTS-IN-PART** and **DENIES-IN-PART** the government's renewed cross-motion for summary judgment; and **DISMISSES** the complaint.

### A. The Court Possesses Jurisdiction To Consider Estes's Claim

As a threshold matter, the undisputed material facts in this matter show that the Court possesses subject-matter jurisdiction to consider Estes's claim to recover outstanding freight charges under the ICA. It is well-established that a carrier may bring a claim to recover charges pursuant to a transportation contract with the United States directly to this Court under the ICA. *Sheridan Transp. Sys., Inc.,* 651 F. App'x at 988. In this regard, section 14705 of the ICA provides that a carrier providing transportation or service for the government must begin a civil action to recover charges for the transportation or service provided within three years from the later of the date of:

> (1) payment of the rate for the transportation or service involved;
> (2) subsequent refund for overpayment of that rate; or
> (3) deduction made under section 3726 of title 31.

*See* 49 U.S.C. § 14705. And so, the Court may entertain Estes's claim under the ICA if Estes brought this claim within three years of receiving payment from MCCS.

In this case, the undisputed material facts show that MCCS paid Estes $28,931.28 for freight services that the government had not already paid to Salem on July 2, 2009. Compl. ¶ 14; Def. App. at 49. The undisputed material facts also show that, on July 13, 2009, MCCS informed Estes that the government would not pay Estes "for amounts that MCCS has already paid to Salem Logistics." Def. App. at 45. In addition, it is without dispute that, on February 3, 2010, Estes brought an action against MCCS and several other defendants in the United States District Court for the Middle District of North Carolina to recover these outstanding freight charges. *See generally Estes Express Lines v. Salem Logistics, Inc.*, No. 1:10-cv-00102 (N.C.M.D. filed Feb. 3, 2010).[4] Given this, Estes has brought its claim within three years of receiving payment from MCCS. And so, the Court possesses jurisdiction to consider Estes's

---

[4] On July 8, 2011, the district court transferred the case to this Court and Estes filed the transfer complaint on October 7, 2011. *Estes Express Lines v. Salem Logistics, Inc.*, No. 1:10-cv-00102 (N.C.M.D. July 8, 2011) (order transferring case); Docket Entry No. 1.

claim under the ICA and the Court **GRANTS** Estes's renewed motion for summary judgment on this threshold jurisdictional issue.

### B. Estes Has Established The Existence Of A Contract With The Government
#### 1. The Federal Circuit Has Settled The Question Of Whether Estes Has Entered Into A Contract With The Government

The undisputed material facts and the Federal Circuit's January 3, 2014, decision in this matter also demonstrate that Estes has entered into a valid contract with the government for transportation services. In their renewed cross-motions for summary judgment, the parties disagree about whether the Federal Circuit has settled the question of whether Estes has entered into a valid contract with the government. Specifically, Estes argues that the Federal Circuit has resolved this question in Estes's favor, because "the Federal Circuit expressly held that 'we conclude that the bills of lading are sufficient to establish privity.'" Pl. Renewed Resp. at 3. The government counters that the Federal Circuit only rendered a jurisdictional ruling in that decision and the government further argues that the Federal Circuit has not decided the merits of Estes's contract claim. Def. Renewed Mot. at 9-10.

For the reasons discussed below, the Court agrees with the government that the Federal Circuit has not addressed the ultimate question of whether the government is contractually liable to Estes in this case. But, the Court reads the Federal Circuit's January 3, 2014, decision to conclude that Estes has entered into a valid contractual relationship with the government with respect to transportation services at issue in this case.

In the January 3, 2014, decision the Federal Circuit recognized that:

> To maintain a cause of action under the Tucker Act based on a contract, Estes must show that there is a contract directly between itself and the Government, *i.e.*, that there is privity of contract. The effect of finding privity of contract is to find a waiver of sovereign immunity. Whether a contract exists is a mixed question of law and fact, but where "the parties do not dispute the relevant facts, the privity issue reduces to a question of law, which we review *de novo*."

*Estes Express Lines*, 739 F.3d at 693 (quoting *Cienega Gardens*, 194 F.3d at 1239) (internal citations omitted). The Federal Circuit also found that the factual circumstances of this case show that the bills of lading that Estes relies upon are sufficient to establish privity of contract

with the government. *See generally Estes Express Lines*, 739 F.3d 689. Specifically, the Federal Circuit held that the undisputed evidence in this case showed that:

> Each shipment handled by Estes was identified by a bill of lading, a freight bill, and a delivery receipt. All bills of lading listed a MCCS or MCX destination as the "consignee," and most bills of lading identified the third party vendor as the "shipper." In some instances, goods were moved from a Navy Exchange location to an MCX location, or from one MCX location to another, in which case a government entity was listed as the "shipper." Pursuant to the Salem-MCCS contract, all bills of lading further indicated that "third party freight charges" were to be billed to "Marine Corps Exchange C/O Salem Logistics." The delivery receipts also specified that charges should be billed to the "Marine Corps Exchange." Each delivery receipt was signed by a representative of the MCCS or MCX location to which the goods were delivered. Following delivery, Estes invoiced "MCX, care of Salem" for freight charges.

*Id.* at 691. And so, the Federal Circuit also concluded that:

> Here, the undisputed facts are sufficient to establish that the Government is a party to the bills of lading not only as the "bill to" party, but also as the shipper at least in those instances in which goods were moved from one Government location to another. MCCS expressly authorized, by contract, its designation as a party to the bills of lading. Indeed, the Government concedes that all bills of lading were generated consistent with the instructions in the MCCS-Salem contract. The Claims Court also found that MCX accepted all shipments without exception, and that a MCX representative signed each delivery receipt listing MCX as the "bill to" party. Under these circumstances, the bills of lading are sufficient to meet Estes's burden to show privity with the Government.

*Id.* at 693-94.

The Court reads the Federal Circuit's decision to hold that a valid contract exists between Estes and the government with regards to the transportation services that Estes provided for the government. In the January 3, 2014, decision, the Federal Circuit specifically held that the bills of lading for the shipments that Estes transported for the government are sufficient to show privity of contract with the government, given the factual circumstances presented in this case. In reaching this conclusion, the Federal Circuit found that, among other things, Estes was a party to the bills of lading at issue, and that this Court had previously found that "MCX accepted all shipments without exception, and that a MCX representative signed each delivery receipt listing MCX as the 'bill to' party." *Id.* at 693. Additionally, the Federal Circuit observed that

Salem's contract with the government "provided that Salem would pay the carriers directly and then invoice MCCS." *Id.* at 691.

As the Federal Circuit states in the January 3, 2014, decision, "[t]he effect of finding privity of contract is to find a waiver of sovereign immunity." *Id*. at 693 (citations omitted). Black's Law Dictionary defines "privity of contract" to mean "[t]he relationship between the parties to a contract, allowing them to sue each other but preventing a third party from doing so." *Privity of Contract,* Black's Law Dictionary (10th ed. 2014). Because the Federal Circuit has held that such privity exists between Estes and the government here, the Court concludes that the Federal Circuit has resolved the question of whether a contractual relationship exists between Estes and the government in Estes's favor. *See Suel v. Sec'y of Health & Human Servs.*, 192 F.3d 981, 984 (Fed. Cir. 1999) (citing *Gould, Inc. v. United States*, 67 F.3d 925, 927–28 (Fed. Cir. 1995)) (The "[l]aw of the case is a judicially created doctrine, the purpose of which is to prevent relitigation of issues that have been decided."); *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 576 F.3d 1348, 1356 (Fed. Cir. 2009) (citation omitted) ("The mandate rule requires that [this Court] follow an appellate decree as the law of the case.").

### 2. The Material Facts Are Not Substantially Different

The Court is also unpersuaded by the government's argument that the Federal Circuit's conclusion of law regarding privity of contract "cannot control the outcome of the merits of this case," because "the post-discovery facts are not substantially the same as the pre-discovery factual allegations [that] Estes presented to the Federal Circuit." Def. Renewed Mot. at 10; *see Wheeler v. City of Pleasant Grove,* 896 F.2d 1347, 1350 (11th Cir. 1990) (holding that "(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to that issue, or (3) the prior decision was clearly erroneous and would work manifest injustice") (internal quotation marks and citation omitted). Specifically, the government argues that the Court should not be bound by the Federal Circuit's mandate, because the post-discovery evidence shows that a government representative did not sign the bills of lading, although Estes previously alleged that the government signed the bills of lading at the destination. Def. Renewed Mot. at 10; Pl. Renewed Mot. at 4. The government also argues that the Court should not follow the Federal Circuit's mandate, because the post-discovery evidence in this case shows that there were no bills of lading for certain shipments

14

between the Navy Exchange and MCCS, and that these shipments have been documented instead by shipping orders. Def. Renewed Mot. at 11; Pl. Renewed Mot. at 4.

The undisputed material facts in this case demonstrate, however, that the evidence before the Court is not substantially different from the evidence previously considered by this Court and the Federal Circuit. As Estes argues in its renewed cross-motion for summary judgment, the Federal Circuit did not find that the government signed the bills of lading at issue in this case. *Estes Express Lines*, 739 F.3d at 693-94. Rather, the Federal Circuit noted that this Court found that "a MCX representative signed each *delivery receipt* listing MCX as the 'bill to' party." *Id.* (emphasis supplied). And so, evidence showing that a government representative did not sign the bills of lading at issue is consistent with the facts previously considered and addressed by the Federal Circuit.

The government is on somewhat firmer ground in arguing that the post-discovery evidence showing that the shipments between the Navy Exchange and MCCS are identified by shipping orders, rather than bills of lading, changes the evidence in this case. Def. Renewed Mot. at 11. In the January 3, 2014, decision, the Federal Circuit held that the bills of lading were sufficient for Estes to show privity with the government. *Estes Express Lines*, 739 F.3d at 693-94. But, the Federal Circuit also relied upon other evidence–that remains unchanged and undisputed in this case–to reach the conclusion that privity of contract exists. For example, the Federal Circuit considered evidence showing that each shipment handled by Estes was also identified by a freight bill and a delivery receipt. *Id*. at 691. The Federal Circuit also considered evidence that the MCX accepted each delivery and that a MCX representative signed each delivery receipt listing MCX as the "bill to" party. *Id*. at 693-94. Neither party disputes that this evidence remains unchanged since the close of discovery. Def. Renewed Mot. at 11; Def. App. at 6; Pl. Renewed Mot. at 4.[5] Given this, the evidence before the Court is not substantially

---

[5] The government also acknowledges that the subject shipping orders—unlike the bills of lading—contain the signature of a Navy Exchange warehouse employee. Def. Renewed Mot. at 11. In addition, a review of the shipping orders that have been provided to the Court reveals that these documents contain information that is substantially similar to the bills of lading previously considered by the Court and the Federal Circuit. Both documents contain "to/from" shipping information, a description of the items to be shipped, and a place for the shipper and carrier to sign the document. Pl. App. at 6-15; Def. App. at 6-7. But, as the government correctly argues, the shipping orders do not specifically mention MCX. Def. Renewed Mot. at 12.

different from the evidence previously considered by the Federal Circuit. The Court is bound by the Federal Circuit's legal conclusions regarding the existence of privity between Estes and the government in this case. And so, the Court **GRANTS** Estes's renewed motion for summary judgment and **DENIES** the government's renewed cross-motion for summary judgment on the issue of whether Estes has established a valid contract with the government.

> C.   **The Undisputed Material Facts Show That The Government Did Not Assume The Risk That Estes Would Not Be Paid**

Having determined that Estes has established the existence of a valid contract with the government, the Court turns to the question of whether the government assumed the risk that Salem would not pay Estes for the freight charges in dispute under the terms of that contract. *See Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 168 (1939) ("While a mandate is controlling as to matters within its compass, on the remand a lower court is free as to other issues.") (citations omitted). For the reasons discussed below, the Court concludes that the government did not assume the risk that Salem would not pay Estes for the freight charges in dispute. And so, the Court **GRANTS** the government's renewed cross-motion for summary judgment and **DENIES** Estes's renewed motion for summary judgment in the issue of whether the government is liable to Estes for the outstanding freight charges.

Generally, contract interpretation is a matter of law. *Dalton v. Cessna Aircraft Co.*, 98 F.3d 1298, 1305 (Fed. Cir. 1996). To determine whether a party to a contract has assumed a risk, the Court generally looks to the terms of the contract. *See, e.g., id*. And so, for Estes to show that the government assumed the risk of paying Estes if Salem did not, Estes must point to something in its contractual relationship with the government that obligates the government to do so. *Baltimore & O. R. Co. v. United States*, 261 U.S. 592, 598 (1923) (holding that to assume liability based on an implied in-fact contract theory, the circumstances must be such that a meeting of the minds can be inferred); *City of Cincinnati v. United States*, 153 F.3d 1375, 1378 (Fed. Cir. 1998) (holding like an express contract, an implied-in-fact contract requires "(1) mutuality of intent to contract; (2) consideration; and, (3) lack of ambiguity in offer and acceptance" and when the government is a party that "the government representative whose conduct is relied upon must have actual authority to bind the government in contract."). Estes makes no such showing for four reasons.

16

First, Estes has not demonstrated, based upon the undisputed material facts in this case, that an authorized representative of the government contractually obligated the government to pay Estes for any outstanding freight charges should Salem fail to do so.[6] In fact, Estes points to no facts to show that the government assumed such a risk under its contract with the government. *See generally* Pl. Renewed Mot.; Pl. Supp. Rather, Estes baldly argues that the government has assumed the risk of nonpayment because, "[i]n the transportation industry, the case law is clear that the party who inserts a broker into the transportation relationship assumed the risk that the broker will fail to pay the freight charges owed." Pl. Supp. at 1-2.

Estes's failure to point to any facts to show that the government is contractually obligated to pay Estes if Salem failed to remit payment is fatal to its claim. Moreover, even if Estes could identify such a contractual obligation, Estes fails to identify a government representative with actual authority to obligate the government to accept that obligation.[7] *See generally* Pl. Renewed Mot. And so, Estes has not shown that the undisputed material facts in this case demonstrate that the government is liable to Estes for its outstanding freight charges. RCFC 56; *Anderson*, 477 U.S. at 256-57 (movant bears the burden of showing that the undisputed material facts demonstrate that it is entitled to summary judgment in its favor).

Second, a careful reading of Estes's renewed motion for summary judgment makes clear that the contractual obligation that Estes alleges exist here may arise only as an operation of law and cannot be enforced in this Court under the Tucker Act. It is well-established that "[t]he Tucker Act does not give a right of action against the United States in those cases where, if the transaction were between private parties, recovery could be had upon a contract implied in law." *Merritt*, 267 U.S. at 341 (citations omitted).

As discussed above, Estes, relies upon transportation industry practice and "legal doctrine" regarding the payment of carriers to argue that it must be paid. Pl. Renewed Mot. at

---

[6] The parties agree that there are no material facts in dispute or unknown relevant to the issue of whether the government assumed the risk of non-payment. Def. Supp. at 2; Pl. Supp. at 5-6.

[7] Additionally, to the extent that Estes relies upon the undisputed fact that a MCX representative signed the delivery receipts for the shipments at issue in this case, this fact, alone, is insufficient to establish that a government representative–with the authority to contractually bind the government–agreed to make such payments. Pl. App. at 6-15; Def. App. at 6-7; *City of Cincinnati*, 153 F.3d at 1378.

12-13. But, as the government correctly argues in its supplemental brief, "[r]elief cannot be granted in this court based upon an implied-in-law contract claim, for which sovereign immunity has not been waived." Def. Supp. at 4; *Hercules, Inc. v. United States*, 516 U.S. 417, 423 (1996); *City of Cincinnati*, 153 F.3d 1377; *Merritt*, 267 U.S. at 341. Estes makes no argument to show that the government's sovereign immunity has been waived to permit a recovery in this case. *See* Pl. Renewed Mot.; Pl. Renewed Resp.; Pl. Supp.; Pl. Supp. Resp. And so, this Court simply cannot award any relief to Estes.

Third, the cases upon which Estes relies to support its argument that the government must pay for the outstanding freight charges at issue in this case do not support its claim. Specifically, Estes's reliance upon *Southern Pacific* and *Reading Co.*–two cases which involve carriers seeking to recover freight charges from the government–is misplaced, because these cases are factually distinguishable from this dispute. Pl. Supp. at 2-3; *S. Pac. Co. v. United States,* 192 F.2d 438 (3d Cir. 1951); *Reading Co. v. United States,* 128 F. Supp. 745 (Cl. Ct. 1955). In *Southern Pacific,* the United States Court of Appeals for the Third Circuit held that an authorized government representative contractually bound the government in connection with a transportation contract, because the government representative possessed implied authority to do so.[8] *S. Pac.*, 192 F.2d at 439-40. But, as discussed above, Estes points to no facts in this case to show that an authorized government representative contractually obligated the government to pay Estes under the circumstances presented here. *See generally* Pl. Supp. Resp.

*Reading Co.* is also inapposite to this case. In that case, the Court of Claims held that the government was liable for payment to a railroad company that shipped certain goods, because a contracting officer knowingly agreed that the government would ship the goods after inviting bids to purchase surplus goods. *See generally Reading Co.,* 128 F. Supp. at 746-48. But again, Estes points to no facts in this case to show that a government representative knowingly agreed that the government would pay Estes should Salem fail to do so. *See generally* Pl. Renewed Mot.

---

[8] As the government observes in its responsive brief**,** the facts of this case are also distinguishable from the facts of *Southern Pacific*, because the bills of lading in *Southern Pacific* had been signed by a government representative. Def. Supp. Resp. at 2-3.

Lastly, Estes's argument that several other cases–which are not binding on this Court and involve transportation contracts between private parties–support its argument that the government assumed the risk of nonpayment is equally unavailing. Pl. Renewed Mot. at 13-16; Pl. Supp. at 3-5. In *Hawkspere Shipping Co., Ltd. v. Intamex, S.A.,* 330 F.3d 225 (4th Cir. 2003), the shipper in that case contacted a broker to ship cargo and the broker, in turn, contracted with a carrier to make the shipment. *Id*. at 228-29. After the carrier invoiced the broker, who, in turn, invoiced the shipper, the shipper paid the broker. *Id*. at 229. But, the broker failed to remit payment to the carrier. *Id*. And so, the United States Court of Appeals for the Fourth Circuit held that the shipper was liable to the carrier for shipping charges because:

> [O]nly if the carrier has released the shipper from liability under the bills of lading is the shipper discharged from his duty to pay the carrier by remitting payment to the consolidator; otherwise, the shipper, by choosing not to pay the carrier directly, assumes the risk that the consolidator might fail to forward the freight payment on to the carrier.

*Hawkspere,* 330 F.3d at 237.[9]

But, neither *Hawkspere,* nor the other cases upon which Estes relies, involve transportation contracts with the government. More importantly, none of these cases address the waiver of the government's sovereign immunity from suit within the context of transportation contract claims. *See id.*; *Strachan Shipping Co. v. Dresser Indus., Inc.,* 701 F.2d 483 (5th Cir. 1983); *Oak Harbor Freight Lines, Inc. v. Sears Roebuck & Co.,* 513 F.3d 949 (9th Cir. 2008); *Nat'l Shipping Co. of Saudi Arabia v. Omni Lines, Inc.*, 106 F.3d 1544 (11th Cir. 1997).

As the Supreme Court has long recognized, the government enjoys a unique status as sovereign and "[t]he United States, as sovereign, is immune from suit save as it consents to be sued." *United States v. Sherwood*, 312 U.S. 584, 586 (1941) (citations omitted). Because Estes has not demonstrated that the government has consented to be sued under the "assumption of risk" doctrine articulated in *Hawkspere*, the Court must **DENY** Estes's renewed motion for

---

[9] The United States Courts of Appeals for the Fifth, Ninth, and Eleventh Circuits have adopted the "assumption of risk" doctrine articulated in *Hawkspere* within the context of motor carriers. *See Strachan Shipping Co. v. Dresser Indus., Inc., 71 F.2d 483, 489-90 (5th Cir. 1983); Oak Harbor Freight Lines, Inc. v. Sears Roebuck & Co., 513 F.3d 949, 954-57 (9th Cir. 2008); Nat'l Shipping Co. of Saudi Arabia v. Omni Lines, Inc.*, 106 F.3d 1544, 1546-47 (11th Cir. 1997). But, again, none of these cases involve transportation contracts with the government. *Id*.

summary judgment and **GRANT** the government's renewed cross-motion for summary judgment on this final issue of liability.[10]

## V. CONCLUSION

In sum, the undisputed material facts in this case and the Federal Circuit's January 3, 2014, decision demonstrate that the Court may consider this matter under the ICA and that Estes has established the existence of a valid contract with the government. But, the undisputed material facts also show that the government is not contractually obligated to pay Estes for the outstanding freight charges in dispute, after Salem failed to do so. Rather, the undisputed material facts show that an authorized government representative did not contractually bind the government in this manner. And so, Estes has not shown that the government is liable for the outstanding freight charges at issue in this case.

For the foregoing reasons, the Court

1. **GRANTS-IN-PART** and **DENIES-IN-PART** Estes's renewed motion for summary judgment;

2. **GRANTS-IN-PART** and **DENIES-IN-PART** the government's renewed cross-motion for summary judgment; and

3. **DISMISSES** the complaint.

The Clerk's Office shall enter judgment accordingly.

No costs.

**IT IS SO ORDERED.**

s/ Lydia Kay Griggsby<br>
LYDIA KAY GRIGGSBY<br>
Judge

---

[10] Because the Court concludes that Estes has not shown that an authorized government representative contractually obligated the government to pay the outstanding freight charges in dispute, the Court does not reach the issue of whether Estes is equitably estopped from recovering such charges. Def. Supp. at 6-7; Pl. Renewed Mot. at 13-14.